### BLAKER v. LUSHBAUGH et al.

Fourth Division. Fairbanks. June 21, 1923.

No. 2598.

**1. Process ⬅127, 133—Service of Summons—Return.**

Summons was issued for service when the original complaint was filed and the suit begun. Two days later it was returned without notation or return of service. On that day an amended complaint was filed, and an alias summons issued. Return was made on the alias summons, showing service of the complaint and summons. On objection to the jurisdiction of the court for failure to serve the alias summons and amended complaint. *Held,* that it is not the proof of service that gives the court jurisdiction, but the fact of service, and if, in the absence of oral testimony, the court can reasonably construe the return to show that, as a matter of fact, the alias summons and the amended complaint were served upon the defendants, the court should not set the judgment aside for that reason.

**2. Process ⬅148—Judgment—Opening or Vacating—Evidence.**

Any direct attack on a judgment upon the ground that there was no service, if third parties have not acquired rights upon the faith of the return, and no one is affected except the parties in the case in which the return is made, oral evidence is admissible for the purpose of impeaching the record.

**3. Process ⬅167—Estoppel.**

Where the judgment is entered, it will cure all defects of service, which are nothing but mere irregularities or errors which might be availed of upon appeal, but cannot be availed of in a direct proceeding to attack the judgment.

This is an action commenced by Julian Blaker in his lifetime, and afterwards continued by Bessie Blaker, the administratrix of the estate, as plaintiff, against Jas. J. Lushbaugh, F. L. Ke-

⬅See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

hoe, J. M. Ryan, A. R. Heiling, E. L. Webster, Guy B. Erwin, and other defendants. It is a suit in equity to set aside a judgment rendered in cause No. 2310, entitled Jas. J. Lushbaugh v. Wade Blaker et al.

The complaint, to justify the court in setting aside the judgment, states three grounds:

First, that no summons was served upon either Wade Blaker or Julian Blaker, and that no copy of the amended complaint was served upon them; secondly, that cross-bills were filed, and no order of court was made requiring a summons to be issued upon those cross-bills, directed to the defendants Blaker; and, thirdly, that during the proceedings defendant Wade Blaker died, and the judgment was rendered after his death, and no substitution was ever made by any of the parties to the case.

I consider that the first ground alleged in the complaint is the most important, and I have given it very painstaking investigation.

The facts are that the case was instituted on the 10th day of May, by the filing of a complaint against Wade Blaker, C. P. Chesley, J. M. Ryan, F. L. Kehoe, and A. R. Heiling. The summons was issued on the same day, and it appears that it was afterwards filed with the clerk on the 12th day of May, with no notation upon it whatever as to its service. It does not show that it ever was in the marshal's hands for service, nor does it show that it was returned by the marshal, nor by whom it was returned into the clerk's office.

On the same day that the summons was so filed in the clerk's office, an amended complaint was filed, which added Julian Blaker and E. R. Peoples as defendants in the action, and upon this amended complaint an alias summons was issued on the same day that the amended complaint was filed—that is, the 12th day of May—and it appears that thereafter an affidavit of service was signed by Fred W. Carter and filed in the case, together with the alias summons, which is annexed thereto, and which recites that he (Carter) served the annexed summons on each of the defendants, Wade Blaker and Julian Blaker, at Fox, Alaska, on the 25th day of June, A. D. 1917, by exhibiting said summons to each of said defendants personally, and at the same time delivering to each of them a copy thereof, to which was attached a copy of the complaint, certified to be a true copy thereof.

It is claimed by the plaintiff that this return of Fred W. Carter shows that it was the original summons that was served upon Wade Blaker and Julian Blaker at the time set out in the return, and that it was the original complaint which was served upon them, together with the original summons, at that time.

R. F. Roth, of Fairbanks, for plaintiff.

John A. Clark, of Fairbanks, for defendants.

CLEGG, District Judge. It is true that the return is open to this construction, but an inspection of the record convinces me that it is easily deducible from the complaint that it was the alias summons that was served upon Wade Blaker and Julian Blaker, and it was the amended complaint that was served upon them.

The law is, as I understand it, that it is not the proof of service that gives the court jurisdiction, but that it is the fact of service. And if the court can reasonably construe this return to show that, as a matter of fact, the alias summons and the amended complaint were served upon these defendants, the court should not set the judgment aside for that reason.

Now it appears further, from what I have already stated, that the original summons was issued at the time the original complaint was filed, and two days prior to the filing of the amended complaint and the issuance of the alias summons.

The original summons is among the files, and it bears nothing on its face or on the indorsements to show that it was ever attempted to be served. On the other hand, the amended complaint was filed two days after the original complaint was filed, and at the same time the alias summons was issued, and it appears clear that the purpose of filing the amended complaint was for the purpose of adding new defendants, including Julian Blaker; therefore the court cannot admit that any person serving any process in the action would serve an original complaint upon Julian Blaker, who was not made a party defendant, either in the original summons or in the original complaint. Furthermore, an inspection of the entire proceedings shows that, after the filing of the amended complaint, no proceedings were had whatever upon anything but the amended complaint.

The amended complaint as filed shows really that it was a substituted complaint, and that it was the intention of the plaintiff so to consider it, and the law is that, where that intention

is manifested, the original complaint is no longer a part of the record, and, in fact, is eliminated from the record.

Furthermore, at the proper time the plaintiff, following the statute and the rules of court, submitted to the clerk his motion for a default, affidavit of service, etc., and default was duly entered against both Wade Blaker and Julian Blaker. It must be presumed that the clerk, in entering the default, was exercising a judicial function, and that he did so after having inspected the record, as the rules require, and that he would not have done so, had this inspection not satisfied him that a personal service had been had.

In this connection the findings of fact afterwards submitted to the court and signed by the court recite that due and legal service was made of summons and process in the action in three different instances; that is to say, with reference to Heiling special findings of fact were made, with reference to Webster, and with reference to Chesley, Ryan, and Kehoe. Furthermore, the judgment which the court signed, and which was entered in the case, recites due and legal service, in similar words, of the summons and complaint upon Julian Blaker and Wade Blaker.

It may be that, if the plaintiff had introduced some testimony, it might have established to the satisfaction of the court that it was the original complaint and the original summons that was served on the defendants Wade Blaker and Julian Blaker, and not the alias summons and the amended complaint. They had the right to do it if they wanted to do it. The deposition of Fred W. Carter might have been obtained, or his testimony obtained in some manner, and if he had testified that it was the original complaint and the original summons that he served upon these defendants, it would be very persuasive, and, in fact, controlling with the court, and the court would in that event have to set the judgment aside for want of jurisdiction.

In the case of Kavanagh v. Hamilton, 53 Colo. 157, 125 P. 512, Ann. Cas. 1914B, 76, reading from the opinion of the court at page 517 (53 Colo. 168), this statement is found:

On any "direct attack on a judgment upon the ground that there was no service, if third parties have not acquired rights upon the faith of the return, and no one is affected except the parties in the case in which the return is made, oral evidence is admissible for the purpose of impeaching the record."

Now, if it be said that the return is ambiguous and subject to two constructions, as I concede it is, it is clear that it was the duty of the plaintiff to introduce oral evidence to show what the facts were. The burden is upon the plaintiff to establish what he alleges, and where he does not exhaust the means at his command to convince the court that the facts which he alleges to be true are true, the court must presume the facts to be against the plaintiff on account of his failure so to do.

I therefore conclude that the alias summons and the amended complaint were served upon each of these defendants in this action in which the judgment sought to be set aside was rendered.

This is the same situation with reference to the service upon the defendants of the various cross-complaints in the action. The cross-complaints show, or the record shows, at least, that each of the cross-complaints were served upon the defendants Wade Blaker and Julian Blaker. But it is contended that there is no such thing as a cross-complaint under our Code, which is true, and that it must be regarded as a cross-bill, and that in that situation, in order to acquire jurisdiction of the defendants, the court must order that the summons and subpœna be issued, addressed to the defendants upon the cross-bill, and that this was not done in the case, and that the cross-bill, therefore, in each instance, was not legally served upon the defendants.

Assuming that that is the law in this jurisdiction, which the court does not decide, it appears from the records, as I have stated, that while this procedure contended for by plaintiff was not followed, as a matter of fact, each of the cross-bills were served upon each of the defendants Wade Blaker and Julian Blaker.

In that case, in my judgment the defendants were notified, and if it be conceded that it was a defective service it was the duty of the defendants at that time to appear in court, and call the matter to the attention of the court, and ask to have it set aside. It is too late, after judgment in an action to set the same aside, to urge this upon the court as a reason for setting it aside. Where the judgment is entered, it will cure all the defects of service, which are nothing but mere irregularities or errors, which might be availed of upon appeal, but cannot be availed of in a direct proceeding to attack the judgment.

It is also urged that a cross-bill must be germane to the cause of action stated in the complaint, that there is no cause of ac-

tion stated in the complaint as to Julian Blaker, and, therefore, this rule is violated with reference to the various cross-complaints.

The amended complaint sets up the mortgage sought to be foreclosed, and alleges that the defendants are interested adversely to the plaintiff, or words to that effect, and with reference to Julian Blaker it merely says that he is interested in the subject-matter of the action, and for that reason it is presumed that he was made a defendant.

Our Code (section 870, in the second paragraph of that section) says:

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to the complete determination or settlement of the question involved therein."

It is in compliance, I take it, with this section of the statute, that Julian Blaker was made a defendant, and it was not necessary to make any further allegations in the complaint than were made as to him, and the rule contended for by counsel does not apply to the case of a foreclosure of a mortgage, where it is necessary to bring in all the parties who may have an interest in the property.

It is further urged as a reason for setting the judgment aside that the defendant Wade Blaker died during the course of the proceedings and prior to the entry of judgment, and that the entry of judgment was not made until two years or after, and is void for that reason.

It appears, from an inspection of the records attacked by this attack on the judgment, that there was no suggestion whatever anywhere in that record that Wade Blaker had died, and from all that appears from the record all the parties to the action, including the court, were unaware at the time of the entry of judgment that Wade Blaker had died. It is admitted in the answer that he did die at the time alleged in the complaint, some time in October, 1917. The default was taken against him two months prior to that time, I think August 31, 1917, and at the time he died he had been, so far as the situation then stood, concluded from making any appearance, although, of course, he might have made an application to appear, and show good reason why he should appear, if he had lived. Although Julian Blaker still continued to live after Wade Blaker died, he made no such application.

The authorities are clear, from my reading them, on this proposition, that where a defendant dies during the course of a trial, and no information of that kind is conveyed to the court, or placed upon the record, the death of the defendant under those circumstances does not render the judgment void, so as to authorize it to be set aside upon a direct attack, although it may be availed of upon appeal. The leading case on the subject is Mitchell v. Schoonover, 16 Or. 211, 17 P. 869, 870, 8 Am. St. Rep. 282. This is an Oregon case, and it was later cited and followed in Stivers v. Byrkett, 56 Or. 565, 108 P. 1014, 109 P. 386, and applied to the case of a judgment against joint debtors, where one of them died prior to the entry of judgment.

Some of the authorities upon this subject are not available; they come from Ohio, Massachusetts, and Illinois; but I have same citations as found in Corpus Juris, which are to this effect:

"It has been held that where one of the defendants in an action on a joint contract dies before judgment, and the judgment is taken against all the defendants without any suggestion of his death or making his representatives parties, such judgment is not void, but merely voidable."

That is a citation from 24 Ohio St. 85. Another is Stoetzell v. Fullerton, 44 Ill. 108, cited in 1 C. J. 236:

"The suggestion of the death of a party to a suit is a mere matter of form to prevent abatement where the cause of action survives; that it may be made by any party, and that, if not made at all, the judgment is not necessarily invalidated by its omission."

It is also held in a great many jurisdictions that in any event the death of a party does not abate the suit, unless an order of court is entered adjudicating that the suit abate. The same reasons do not exist for setting a judgment aside in a direct attack that would exist in the case of an appeal. There is no doubt that there were irregularities and errors in the trial of this case, in the judgment which is attacked here, which would authorize a reversal of the case on appeal; but this court cannot usurp the functions of the Court of Appeals.

Findings of fact and conclusions of law may be drawn in accordance herewith, and judgment entered for defendant.